UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:05CV-00036-ERG

**CHERYL L. SCOTT**                      **PLAINTIFF**

**VS.**

**CITY OF MADISONVILLE,**
**MADISONVILLE POLICE DEPARTMENT,**
**HOPKINS COUNTY SHERIFF'S**
**DEPARTMENT, SCOTT TROUTMAN,**
**AND SHAWN BEAN**                      **DEFENDANTS**

## MEMORANDUM OPINION

### BACKGROUND

Before the Court is the unopposed motion for summary judgment filed by Defendants City of Madisonville and Madisonville Police Department (DN 22). Defendants argue they are entitled to summary judgment in their favor because (1) the Madisonville Police Department is not an entity subject to suit; (2) the search of Plaintiff's home was lawful and pursuant to a search warrant issued by a Hopkins County District Judge; and (3) the search of Plaintiff's home did not cause her severe emotional distress (DN 22). This matter is ripe for disposition. For the reasons set forth below the undersigned concludes summary judgment should be granted in favor of Defendants City of Madisonville and Madisonville Police Department as to all claims Plaintiff has asserted against them in her complaint.

### FINDINGS OF FACT

Plaintiff, Cheryl Scott ("Scott") has brought this action pursuant to 42 U.S.C. § 1983 (DN 1). The bulk of Scott's claims arise out of what she alleges was a warrantless search of her residence on March 15, 2004 (DN 1). The remainder of her claims arise out of her being charged with second degree hindering the apprehension of a fugitive (DN 1). Scott names the City of Madisonville as a Defendant because it had control and/or exercised sovereignty over Defendant Madisonville Police Department which in turn had control and/or exercised sovereignty over unknown Defendant City Police Officers and S.W.A.T. team members that participated in the search of her residence (DN 1). The Hopkins County Sheriff's Office is named as a Defendant because it was the employer, had control and/or exercised sovereignty over Defendants Scott Troutman ("Troutman") and Shawn Bean ("Bean") and their actions (DN 1). Scott has sued Troutman and Bean in both their official and individual capacities and asserts that they initiated, controlled, participated and/or perpetrated the illegal search, seizure and destruction of her property, as well as intentionally inflicted emotional distress and maliciously prosecuted her (DN 1).

Discovery has revealed that the search of Scott's residence actually occurred on March 17, 2004, after Hopkins District Judge Logan Calvert signed the search warrant (DN 21, Exhibits A and B; DN 24, Troutman Deposition at Pages 42, 69, 95-96). During her deposition Scott acknowledged that she does not have any recollection of what day of the week the search occurred (DN 24, Scott Deposition at Page 51). The purpose of the search warrant was to look for a fugitive named John Tapp (DN 24, Troutman Deposition at Page 38). An arrest warrant for Tapp had been issued by Hopkins District Judge Logan Calvert after Tapp allegedly shot a handgun into a trailer in an effort to shoot his girlfriend Theresa Blair.

While Tapp was on the run law enforcement officers contacted him by cell phone to

encourage him to surrender (DN 24, Troutman Deposition at Pages 74, 77, 86-89). Troutman's investigation revealed that Tapp was using a cell phone that belonged to Scott (DN 24, Troutman Deposition at 77, 87-89). During her deposition, Scott testified she had an extra prepay cell phone lying around her house that she sold to Tapp for $20.00 (DN 24, Scott Deposition at Pages 41-42). Law enforcement officers had received more than one tip placing Tapp at Scott's home on more than one occasion while he was evading arrest (DN 21, Troutman Deposition at Pages 25-26). For example, one individual reported seeing Tapp passed out on the couch at Scott's residence the day before the warrant was obtained (DN 21, Troutman Deposition at Pages 25-26). The next day, the same individual again reported seeing Tapp at Scott's residence which prompted Troutman to seek the search warrant (DN 24, Troutman Deposition at Pages 25-26). Notably, a Hopkins County District Judge found the information in Troutman's affidavit satisfied the probable cause standard necessary to issue a search warrant for Scott's residence.

Law enforcement officers did not find Tapp at Scott's home on March 17, 2004. Tapp was subsequently apprehended. Troutman later sought an arrest warrant for Scott, accusing her of hindering the apprehension of Tapp. She was arrested on March 24, 2004 (DN 24, Troutman Deposition at Page 81). Troutman does not know why the Hopkins County Attorney's Office dismissed the charges against Scott (DN 24, Troutman Deposition at 72).

During her deposition, Scott acknowledged only the search warrant and criminal charge form the basis for her claim that Troutman was out to harass her (DN 24, Scott Deposition at Page 43). Scott claims $3,791.68 in damages to floors and walls and $1,340.00 in damages to a storm door, a cabinet, picture frames, and door facings (DN 24, Scott Deposition at Page 54). Scott has replaced only the storm door (DN 24, Scott Deposition at Page 54). She is claiming $100,000.00

for emotional distress (DN 24, Scott Deposition at Page 55). However, she acknowledges suffering from and being treated for emotional distress for a number of years before the search occurred (DN 24, Scott Deposition at Pages 56-66). Over the years Scott has been treated with Diazepam and Valium (DN 24, Scott Deposition at Pages 58-66). Scott testified the search of her home exacerbated her pre-existing emotional distress (DN 24, Scott Deposition at Page 67).

Notably, Scott was not at home at the time the search occurred (DN 24, Scott Deposition at Pages 49-51). As a result of receiving a call from Dawn Stroble, Scott drove by her residence and saw officers of the Madisonville Police Department, deputies from the Sheriff's Office, and the S.W.A.T. team at her house (DN 24, Scott Deposition at Page 49). After Scott drove by her house she continued to her cousin's house which is around the block (DN 24, Scott Deposition at Pages 50-51). Scott testified that she returned to her home the day after the search (DN 24, Scott Deposition at Pages 51-52).

## CONCLUSIONS OF LAW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The inquiry under Rule 56(c) is "whether the evidence presents a sufficient disagreement to require submission to a jury of whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986); see also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a

...

party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial ..." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and demonstrating the absence of any genuine issue of material fact. Celotex, 477 U.S. at 322-323. Once the moving party satisfies this burden, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of fact for trial. Anderson, 477 U.S. at 247-248. Although the Court must review the evidence in a light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present "*specific facts* showing there is a *genuine* issue for trial," by affidavit, depositions, answers to interrogatories, and/or admissions on file. Fed.R.Civ.P. 56(e) (emphasis added) and 56(c); Celotex, 477 U.S. at 324. The substantive law governing the case will determine what issues of fact are material. Street, 886 F.2d at 1479-1480. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, the motion for summary judgment should be granted." Pits v. Michael Miller Car Rental, 942 F.2d 1067, 1069-1070 (6th Cir. 1991) (citing Matsushita Elec. Ind. Co., 475 U.S. at 586).

Here, the movants have sustained their burden of informing the Court of the basis for their motion and have demonstrated the absence of any genuine issue of material fact. By contrast, Scott has made no effort to sustain her burden of demonstrating that there is a genuine issue of fact for trial. Furthermore, in light of the evidence and arguments made by the movants, the Court

concludes the record taken as a whole could not lead a rational trier of fact to find for Scott. Therefore, the movants are entitled to entry of a final judgment in their favor and against Scott as to each claim she has asserted against them.

## CONCLUSION

For the foregoing reasons, the Court concludes the motion for summary judgment filed by Defendants City of Madisonville and Madisonville Police Department, (DN 22) should be GRANTED. The Court will issue a separate order granting the motion for summary judgment.

Copies: